IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PERSONAL KEEPSAKES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. 11 C 5177 |
| | ) | |
| PERSONALIZATIONMALL.COM, INC., TECHNY ADVISORS, LLC, ABERNOOK, LLC and DOE I thought DOE V, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Personal Keepsakes, Inc. (PKI), the operator a website selling personalized gifts and knickknacks, sued Personalizationmall.com, Inc. ("Pmall"), Techny Advisors, LLC ("Techny") and Abernook, LLC ("Abernook") (together, "Defendants"), all of which also sell personalized gifts on the internet, alleging that Defendants took PKI's copyrighted poems and incorporated them their own products. Defendants have answered PKI's copyright infringement claim, but have moved to dismiss PKI's other claims under Rule 12(b)(6). According to the Defendants, PKI has not sufficiently alleged a violation of the Digital Millenium Copyright Act (DMCA), cannot allege a violation of the Lanham Act under Supreme Court precedent, and the Copyright Act preempts PKI's claims under the Illinois consumer fraud statutes and Illinois common law. For the following reasons, the Court grants Abernook's and Techny's Defendants' motions (Docs. 35 and 38) in their entirety and grants Pmall's motion (Doc. 32) in part.

## I. FACTS

The Court takes the following facts alleged by PKI in its complaint as true. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). PKI designs and produces gift items personalized with poetry verses for special occasions and then sells them on its website, poetrygift.com. (Doc. 1, Compl. ¶ 1.) Specifically, PKI's owner writes poetry verses that are then incorporated into gift items. (*Id*. at ¶ 8.) PKI's complaint discusses two specific products and attaches the webpages selling them to its complaint. (*Id.* at Ex. A.) PKI sells a gift for a baptism like this:



(*Id*. at Ex. A.) The purchaser can personalize item with a photo. (*Id*.) It includes a poem, called "On Your Baptism Day," that can be personalized with the name of the person that was baptized and other details:

On Your Baptism Day<br>
**Name**<br>
(Optional Church Name)<br>
(Baptism Date)<br>
You are a precious gift to us<br>
sent from God above.<br>
He placed you in our loving arms and

blessed us with your love.

May you always walk with Jesus -
Live your faith in all you do.
Treasuring God's love -
the way we treasure
the priceless gift of you.
With Love,
(Names)

(*Id.*) That poem is copyrighted. (Compl. ¶ 11; Ex. C.) The second product is a similar gift for a wedding ring bearer:




(*Id.* at Ex. A.) This product can be personalized in the same way as the baptism gift, and has the following poem:

(Optional Phrase Above Name)
**(Name)**
How lucky we are to have a ring bearer

who's so cute in every way.
Someone who knows how to walk down an aisle
and steal everyone's heart away.
So thank you for being our ring bearer,
and helping to lead the way.
But thank you most of all for helping
to make ours a perfect wedding day.

(*Id.* at Ex. A.) That poem is also copyrighted. (*Id.* at ¶ 11; Ex. C.)

Defendants sell the same types of personalized gift items on various websites, including personalizationmall.com, giftsforyounow.com, and abernook.com. (*Id.* ¶¶ 3-5.) PKI attaches to its complaint examples of items sold by Defendants that allegedly misuse PKI's copyrighted material. For instance, Pmall sells this "Walk With Jesus© Baptism Keepsake":




(*Id.* at Ex. B.) That product has the following text in the background:

> You are a precious gift to me sent from God above. He placed you in my loving arms and blessed me with your love. May you always walk with Jesus - live your faith in all that you do. Treasuring God's love the way I treasure the priceless gift of you.

(*Id.*) Techny, on the website giftsforyounow.com, sells this gift for a ring bearer:




(*Id.*) On the left side of the item, there is a poem that reads:

How lucky we are to have a ring bearer
who's so cute in every way.
Someone who knows how to walk
down the aisle
stealing everyone's heart away.
Thank you for being our ring bearer,
and helping in a special way.
But thank you most of all for helping
to make ours a perfect wedding day.

(*Id.*) Abernook, on the website abernookgifts.com, sells this item for a ring bearer:




(*Id.*) The frame has text that reads:

> How lucky we are to have a ring bearer who's so cute in every way. Someone who knows how to walk down the aisle stealing everyone's heart away. Thank you for being our ring bearer, and helping in a special way. But thank you most of all for helping to make ours a perfect wedding day.

(*Id.*)

The gist of PKI's complaint is that Defendants took the same poems from its products and put them on their competing products. In addition to the copyright infringement claim that Defendants did not move to dismiss (Count VI), PKI asserts Defendants violated the DMCA by removing the "copyright management information" (CMI)—like the poetrygift.com website name and associated copyright notice—from PKI's copyrighted poems so that Defendants could pass the poems off as their own. (*See id.*, Count I, at ¶¶ 12-22.) PKI also alleges Defendants violated § 43(a) of the Lanham Act by expropriating PKI's copyrighted materials and repackaging them for sale as

if they were Defendants' products. (*See id.*, Count II, at ¶¶ 23-33.) Finally, PKI brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and Illinois common law, asserting that Defendants' actions were unfair and confused customers. (*See id.*, Counts III-V at ¶¶ 34-51.)

## II. STANDARD

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (noting "'plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not.") A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Determining whether a complaint states a plausible claim for relief requires "the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. "Specific facts are not necessary . . . the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Swanson*, 614 F.3d at 404 (citing *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)). In short, under *Iqbal*, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together . . . the court will ask itself could these things have happened, not did they happen." *Swanson*, 614 F.3d at 404.

## III. DISCUSSION

### A. Lanham Act Claim

#### 1. Section 43(a)(1)(A)

Section 43(a)(1)(A) of the Lanham Act gives a plaintiff a cause of action against anyone who sells a product using a "false designation of origin," among other things, if that designation is likely to confuse or deceive customers as to the origin of the product. *See* 15 U.S.C. § 1125(a)(1)(A). PKI alleges in its complaint that by ripping off PKI's poems, Defendants disassociated the poems from their true origin and copyright owner (PKI), and as a result, confused the buying public. Defendants assert that PKI cannot state a Lanham Act claim in light of the Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003).

The facts of *Dastar* are worth recounting in depth. In that case, a Hollywood studio (the plaintiff) produced a television series based on then-General Dwight Eisenhower's book about the Allies' victory in Europe. *Id*. at 25. After the studio let the series' copyright lapse and it entered the public domain, a production company bought a copy of the series, re-edited it, and sold it under a new title as its own product. *Id*. at 26-28. The studio sued under the Lanham Act, asserting that the production company was selling the studio's product as its own. *Id*.[1] The Court noted that if the production company simply bought the studio's tapes and re-packaged them, the production company would obviously violate the Lanham Act. *Id.* at 31. The Court, therefore, distilled the issue down to what "origin" meant in the statute: if the "origin" of the product referred to the "manufacturer or producer of the physical goods" (the videotapes), then the production company

[1] As *Dastar* explains, this is called a "reverse passing-off" claim (*Dastar*, 539 U.S. at 27 n.1), which is what PKI alleges here. A "passing-off" claim, on the other hand, "occurs when a producer misrepresents his own goods or services as someone else's." *Id.*

would not run afoul of the Lanham Act. *Id.* at 31. If however, the "origin" of the product "include[d] the creator of the underlying work" that was copied, then the studio was the origin of the product. *Id.* The Court found that the problem with considering the creator as the origin of the product was that it brought the Lanham Act into conflict with the Copyright Act. *Id*. at 33-34 (remarking that "in construing the Lanham Act, [the Court has] been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright"). Reading "origin" according to "the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*)," the Court concluded that "origin," as it used in § 43(a)(1)(A), "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id*. at 37 (emphasis in original). Because the production company was the producer of the actual tangible item at issue, there could be no "false designation of origin" and therefore no Lanham Act claim. *Id*. at 38.

Though PKI alleges that Defendants "repackaged" PKI's goods (Compl. ¶ 25), the only reasonable inference from the pictures attached to PKI's complaint is that Defendants are selling different products than PKI. The pictures show that, at worst, Defendants incorporated PKI's copyrighted poems into their own products; Defendants have not sold PKI's tangible products as their own. Under *Dastar*, that is a copyright claim, not a Lanham Act claim. In other words, applying *Dastar*, PKI is not the "origin" of the product and PKI does not have a claim under § 43(a)(1)(A) of the Lanham Act. *See e.g.*, *Bob Creedon & Associates, Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 879-80 (N.D. Ill. 2004) (Nolan, M.J.) (noting the complaint alleged the software system sold by the defendants was "derived" from the plaintiff's system (not that they were the same

product), and under *Dastar* the plaintiff failed to state a claim).

PKI cites several other cases from this District that distinguish *Dastar* and allow Lanham Act claims to go to discovery. Setting aside that those cases are not binding on this Court, they are distinguishable because the products at issue were photographs, and the defendants in those cases allegedly copied the pictures wholesale. For instance, in *Cable v. Agence France Presse*, 728 F. Supp. 2d 977 (N.D. Ill. 2010) (Manning, J.), a photographer alleged that a news agency included his pictures of President Obama's Hyde Park home in an online photograph database without permission. *Id.* at 978. That court found that the news agency was simply repackaging the product at issue—the photographs—as its own and let the Lanham Act claim proceed. *Id.* at 981 (noting that *Dastar* found that a § 43(a)(1)(A) claim "would undoubtedly be sustained if [the production company] had bought some of [the studio's] videotapes and merely repackaged them as its own."). Similarly, in *Defined Space, Inc. v. Lakeshore East, LLC*, 797 F. Supp. 2d 896 (N.D. Ill. 2011) (Gottschall, J.), the photographer licensed his photos to the defendant, but the defendant started to use them without attribution. *Id.* at 897. That court also zeroed in on the same language in *Dastar* approving § 43(a)(a)(A) claims where the defendant is re-selling the full tangible product as their own product. *Id.* at 901; *see also Do It Best Corp. v. Passport Software, Inc.*, 01 C 7674, 2004 WL 1660814, at *17 (N.D. Ill. Jul. 23, 2004) (Pallmeyer, J. ) (allowing a Lanham Act claim to proceed where the defendant allegedly re-sold the software at issue after removing the plaintiff's copyright notice and putting on a different one). In short, those cases are different than this case because here the products *themselves* are different, even if the poem incorporated in them was the same.[2]

[2] Even as to this fact pattern concerning photographs, the courts in this District are split. *See Cyber Websmith, Inc. v. Am. Dental Ass'n*, No. 09 C 6198, 2010 WL 3075726, at *1, 2 (N.D. Ill. Aug. 4, 2010) (Dow, J.) (finding the Copyright Act preempted the plaintiff's Lanham Act claim where defendants allegedly "copied directly"

PKI also asserts that *Dastar* is distinguishable because the work in question in that case was in the public domain. PKI highlights the Supreme Court's concern with creating "a species of mutant copyright law" requiring those that use public domain material to credit the original producer of the work or risk running afoul of the Lanham Act. The Court's discussion of the public domain issue was aimed clearly at stamping out any attempts by content producers to use the Lanham Act as a back-door perpetual copyright for works in the public domain. Indeed, the Court emphasized that it did not want to upset the "carefully crafted bargain" between content producers and the public embodied in the Copyright Act. While *Dastar* arose in the context of a public domain work, the Court did not limit to public domain works its holding that "origin" in § 43(a) is limited to the producer of "tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." In other words, the Court's interpretation of the text of the Lanham Act was independent of whether the "communication embodied" in the product was copyrighted or not. *See Contractual Obligations Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 130 (S.D.N.Y. 2008) (collecting cases finding that *Dastar*'s holding applies irrespective of whether the work was protected by copyright).[3]

2. Section 43(a)(1)(B)

Finally, PKI asserts that it also has a claim under § 43(a)(1)(B) of the Lanham Act and that *Dastar* only considered a claim brought under § 43(a)(1)(A).[4] Section 43(a)(1)(B) forbids "false

various webpages, graphics and photographs from plaintiff's website).

[3] *Defined Space* nominally distinguished *Dastar* on the grounds that *Dastar* considered a work in the public domain, but did not analyze why that distinction matters. *See* 797 F. Supp. 2d at 901.

[4] In dicta, the *Dastar* Court noted that its holding only applied to § 43(a)(1)(A), not § 43(a)(1)(B). *See Dastar*, 539 U.S. at 38.

designation of origin" which, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). In short, PKI asserts that *Dastar* aside, it has a claim that Defendants misrepresented the origin of the poem and its copyrighted status when they advertised their products for sale. Implicitly, PKI asserts that the identity of the author the poem is the "nature," a "characteristic," or a "quality" of the poems.

Though *Dastar* did not consider § 43(a)(1)(B) and the Seventh Circuit has not addressed the issue, many other courts have found that *Dastar*'s reasoning and holding applies equally to claims brought under that section. For instance, in *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137 (9th Cir. 2008), the Ninth Circuit affirmed the district court's dismissal of a claim brought under § 43(a)(1)(B) that alleged the defendant misrepresented that it had properly licensed the songs it was selling. *Id.* at 1143. The court found that "the nature, characteristics, and qualities" of a product under the Landham Act "are more properly construed to mean characteristics of the good itself," not things like copyright licensing status. *See id.* at 1144. Similarly, the Federal Circuit recently considered an instance where a defendant advertised that its basketballs' "dual cushion technology" was "exclusive, proprietary and innovative" when, in fact, the defendant had copied the plaintiff's technology. *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307-08 (Fed. Cir. 2009) *aff'ing* No. 06-210, 2007 WL 2058673, at *1 (W.D. Wash. Jul. 16, 2007). Relying on *Sybersound* and following the lead of *Dastar*, the Federal Circuit concluded that authorship or the source of the technology was not a nature, characteristic, or quality of the product under § 43(a)(1)(B) and any ruling to the contrary would risk creating overlap between the Lanham Act and the Copyright Act. *Baden*, 556 F.3d at 1307. A number of district courts have reached the same conclusion that per

*Dastar*, claims under § 43(a)(1)(B) asserting that the defendant made false statements in advertising as to authorship are not viable. *See ZS Assocs., Inc. v. Synygy, Inc.*, No. 10 C 4274, 2011 WL 2038513, at *8-9 (E.D. Pa. My 23, 2011); *Antidote Int'l Films, Inc. v. Bloomsbury Publishing, PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006); *Sidem, S.A. v. Aquatech Int'l Corp.*, No 10 C 81, 2010 WL 2573882, at *5-8 (W.D. Pa. Jun. 23, 2010) (collecting cases finding the same).

The Court finds this precedent persuasive. As one court has noted, if authorship was considered to be part of the "nature" of the product, or a "characteristic" or "quality" of it, then the claim the same Supreme Court rejected in *Dastar* under § 43(a)(1)(A) would be available under § 43(a)(1)(B), assuming that product was commercially advertised (as most products are). *See Antidote Int'l*, 467 F. Supp. 2d at 400 (finding *Dastar*'s holding that "origin" refers to producers, not authors, "necessarily implies that the words 'nature, characteristics [and] qualities" in § 43(a)(1)(B) cannot be read to refer to authorship.") In *Dastar*, the Supreme Court's overriding concern was that the Lanham Act would effectively expand copyright protection or otherwise upset the careful balance underpinning the Copyright Act. PKI's reading of § 43(a)(1)(B) would push the Lanham Act into the exclusive realm of copyright. PKI cannot state a claim under § 43(a)(1)(B) or § 43(a)(1)(A).

**B. DMCA Claim**

The DMCA seeks to hamper copyright infringement in the digital age by protecting "copyright management information" (CMI) in various ways. *See* 17 U.S.C. § 1202.[5] Specifically, the DMCA forbids distributing false CMI , removing or altering CMI, or distributing works knowing the CMI has been removed or altered. *See id.* CMI, in turn, is defined as the information about the

---

[5]The DMCA also allows claims for circumventing technological measures used by copyright owners to protect their works (*see* 17 U.S.C. § 1201), but PKI has not brought suit under that section.

copyright that is "conveyed in connection with copies" of the work, including the title of the work, the author of the work, the name of the copyright owner, and identifying numbers or symbols referring to copyright information. *See* 17 U.S.C. § 1202(c). PKI's claim boils down two allegations: (1) that Defendants removed the CMI conveyed with the poems when it copied the poems, and (2) Defendants provided false CMI on the pages selling the infringing products and in their general website terms and conditions, which make various statements about copyrights on the website.

As to the first allegation, Defendants assert that what PKI claims is CMI is, based on the exhibits and allegations of the complaint, not CMI. In its response brief, PKI identifies three pieces of purported CMI that Defendants removed when it copied the poems: the poetrygift.com name, the titles of the works (namely, "Baptism Gifts"/"On Your Baptism Day" and "Ring Bearer Gift"/"To Our Ring Bearer"), and the copyright notice on every page of the website. Poetrygift.com cannot be CMI, however, because the copyright registrations attached to the complaint show PKI, not poetrygift.com, as the owner of the copyright. (*See* Doc. 1, Ex. C.) That makes poetrygift.com, at best, an indicator of the seller of the product, which says nothing about the copyright status of the product; in the same way, Amazon.com does not suggest that Amazon owns copyrights with respect to every product it sells. Similarly, the titles cannot be CMI because the copyright registrations do not list the titles of the works as they appear on PKI's website, but rather refers to them as "Personal Keepsakes VI" and "Personal Keepsakes X." (*Id.*) Again, the point of CMI is to inform the public that something is copyrighted and to prevent infringement. Put another way, if someone saw the poem, and then searched its title to see if it was copyrighted, the search would come up empty because the title of the work is not "On Your Baptism Day" or "Baptism Gifts" for purposes of

copyright. Allowing a plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation against parties who have tried to tread carefully to avoid copyright infringment.

PKI cites to paragraph 13 of its complaint to assert that it plead that each page of its website has a copyright notice, but that paragraph simply states that the works were uploaded via a CD-ROM containing digital files encoded with a copyright notice. (Compl. ¶ 13.) The best PKI does is to generally allege that a copyright notice appeared with the works. (*See id.* at ¶ 14.) However, the exhibits (which are the first pages of website printouts) do not show any copyright notices and consequently, PKI has not stated a plausible DCMA claim based on copyright notices. As an aside, the Court's visit to poetrygift.com shows that as of the date of this order, PKI's website has a copyright notice on each of its pages that reads simply "Web Site and Original Verses - © (1991-2012)." Assuming that notice also appeared on the pages shown by the exhibits, it is plausible that the copyright notice refers to the poems at issue, though the exhibits do not suggest the poems at issue are "original verses" as referenced in the notice.

Turning to the false CMI allegations, PKI alleges that Pmall used false CMI when it put the copyright "©" in the name of its "Walk With Jesus© Baptism Keepsake." As discussed above, the Pmall product incorporates the same (or a very similar) poem as PKI's product, and that © follows a line in the poem that forms the title "Walk With Jesus." Consequently, it is plausible that the © could refer to the poem, and not the product as a whole, and PKI states a DCMA claim as to Pmall on that basis. The exhibits show that Abernook and Techny, on the other hand, did not use a copyright symbol in connection with a line from the poem, and PKI cannot state a claim as to them.

PKI also suggests that all three Defendants made statements on their website terms and

conditions pages (which are attached to the complaint) that state that they own the poems. Pmall's website says:

> The Website contains intellectual property rights owned by Pmall and any unauthorized use of the Website may violate or infringe upon the intellectual property rights of Pmall or a third party.

(Doc. 1, Ex. D, at 29.) Techny's website giftsforyounow.com states:

> All content included on this site, such as text, graphics, logos, button icons, images, audio clips, digital downloads, data compilations, and software, is the property of this site's owner or its content suppliers and protected by United States and international copyright laws.

(*Id*. at 31.) Abernook's statement is similar to Techny's and reads:

> Our Site and all its content, including but not limited to its text, photographs including those of product, graphics, logos button icons, images, audio clips, and software, is owned by or licensed to 'Abernook, LLC' and may be protected by United States and international patent, trademark, and copyright laws and other intellectual property laws.

(*Id*. at 33.) As for Pmall's page, even taking PKI's allegations as true, PKI does not allege that Pmall's entire website is stolen from PKI or anyone else and consequently, the only inference the Court can reach about Pmall's statement is that Pmall owns at least some intellectual property rights on its website and as a result, its statement is not untrue. As for Techny's and Abernook's statements, they are drafted in absolute terms. Accepting PKI's allegations as true, Techny's and Abernook's statements must be untrue. However, whether they are CMI "conveyed" with the poems is different question. Put simply, these website terms are not close to the poem; rather, per PKI's allegations, they appear on another page on the website. Some courts have held, persuasively, that a defendant must remove the CMI from the "body" or the "area around" the work to violate DMCA. *See Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, No. 03 C 4962, 2004 WL 2583817, at *4, 14

(E.D. Pa. Nov. 12, 2004) (finding no DMCA violation where a book contained 118 copyrighted photos with no CMI near them and the defendant had a general copyright notice on the whole book). That rule is consistent with the text of the statute, which requires the CMI to be "conveyed" with the copyrighted work. *See* 17 U.S.C. § 1202(c). Such a rule prevents a "gotcha" system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website. For the purposes of this motion, the Court need not determine exactly how close the CMI must be to the work to pass muster under the DMCA. However, as a matter of law, if a general copyright notice appears on an entirely different webpage than the work at issue, then that CMI is not "conveyed" with the work and no claim will lie under the DMCA. PKI cannot base a DMCA claim on Defendants' general copyright notices placed elsewhere on the site.

Though the Court finds that only a small part of PKI's DMCA claim survives, and only as to one defendant, PKI has alleged enough to suggest that it could` state a DMCA claim. The Court will permit PKI another opportunity to plead its DMCA claim as to all the defendants, if it can do so in good faith based on the guidance in this opinion.

**C. Illinois State Law Claims**

PKI also brings a number of state law claims, specifically for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), deceptive trade practices (Count IV) and common law unfair competition (Count V). Defendants assert that these claims are simply copyright claims dressed up and that, consequently, they are preempted by the Copyright Act. To "avoid preemption, [the] law must regulate conduct that is quantitatively distinguishable from that governed by federal copyright law – i.e., conduct other than reproduction, adaption, publication, performance and display." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). A state

law claim is preempted by the Copyright Act where: (1) the work is within the subject matter of copyright; and (2) the rights available under state law are equivalent to any of the exclusive rights provided by § 106 the Copyright Act. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (citing 17 U.S.C. § 301(a)); *see also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). A right can be "equivalent" even if it requires additional elements to make out a cause of action, if those additional elements do not differ in kind from those necessary to avoid copyright infringement. *Id.* at 676-78. The poems are unquestionably subject to copyright, so that leaves the question of comparing the rights under state law to the rights under the Copyright Act.

Here, Plaintiff's state law allegations do nothing more than incorporate PKI's previous factual assertions and conclude that those allegations violate the various statutes and common law. (*See* Compl. ¶¶ 34-45.) In its brief, PKI asserts that its state law claims are "tied more closely to the notion of unfair competition than the copyright infringment count." (Doc. 46 at 19-20.) As many courts in this District have noted, every copyright claim inherently involves the notions of unfair competition and consumer confusion and deception, because it is fundamentally not fair competition and confusing to customers to rip off another's protected work. *See Cyber Websmith*, 2010 WL 3075726 at *3 (collecting cases noting finding that consumer confusion issues is present up in all copyright cases and such elements "are not considered extra elements that qualitatively alter the nature of a claim where they are asserted"); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1013 (N.D. Ill. 2000) (dismissing state law claims and noting that the plaintiff did nothing more than re-allege the same facts as the copyright claim and state those actions also violated the Illinois unfair competition and consumer fraud statutes); *Defined Space*, 797 F. Supp. 2d at 902-03 (following *Natkin* and

dismissing the state law claims). In short, PKI's state law claims are simply copyright claims in different clothing, and they are dismissed as preempted by the Copyright Act.

## IV. CONCLUSION

For the foregoing reasons, Counts II through V are dismissed with prejudice as to all Defendants. Count I is dismissed without prejudice as to Abernook and Techny, but not Pmall. By February 22, 2012, PKI may file an amended complaint re-alleging Count I as to all defendants. Defendants shall respond to that amended complaint by March 14, 2012.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 8, 2012