IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| PERSONAL KEEPSAKES, INC.,<br>d/b/a POETRYGIFT.COM, an Illinois corp., )<br> )<br> )<br> Plaintiff, )<br>-vs- )<br> )<br>PERSONALIZATIONMALL.COM, INC., )<br>an Illinois corp., *et al.*, )<br> Defendants. ) | NO.  1:11-cv-05177<br><br>JUDGE THARP<br><br>MAG. JUDGE KEYS |

---

## PLAINTIFF'S COMBINED MEMORANDUM:

### I. IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO STRIKE DEFENDANT TECHNY'S MULTIPLE AND SUCCESSIVE RULE 12(b)(6) MOTIONS TO DISMISS,

### AND ALTERNATIVELY

### II. IN OPPOSITION TO THE RULE 12(b)(6) MOTIONS

---

DATED: AUGUST 21, 2012

ATTORNEYS FOR PLAINTIFF:

Mark Barinholtz
Melinda Schramm
MARK H. BARINHOLTZ, P.C.
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

I. RENEWED PROCEDURAL MOTION TO STRIKE ......... ........................... 1

II. ARGUMENT IN OPPOSITION ON THE MERITS ..................................... 4

    A. Background of Proceedings ............................................... 4

    B. Critique of Defendant's Preamble and Introduction .............................. 5

    C. Legal Standards applicable to the Rule 12(b)(6) Motion ......................... 6

    D. Defendant's approach should wait for summary judgment ....................... 7

    E. Defendant's admissions ................................................. 7

    F. PKI states a valid claim for alteration or removal and
       dissemination of false copyright management
       information under the DMCA ..................................... 9

    G. Defendant's "short phrase" and related arguments lacks merit ................. 16

III. CONCLUSION ................................................................ 21

i

## TABLE OF AUTHORITIES

__CASES__                                                                  __PAGE(S)__

*Agence France Presse v. Morel*,
    769 F.Supp.2d 295 (S.D.N.Y. 2011) ..................................... 9, 13

*Alberto-Culver Co. v. Andrea Dumon, Inc.*,
    466 F.2d 705 (7th Cir. 1972) ........................................ 16, 17, 18

*Allen v. Destiny's Child*,
    2009 WL 2178676 (N.D. Ill. Jul. 21, 2009) ........................... 17, 19

*American Dental Ass'n v. Delta Dental Plans*,
    126 F.3d 977 (7th Cir. 1997) ........................................ 17

*Andreas v. Volkswagen of Amer.*,
    336 F.3d 789 (S.D.N.Y. 2003) ....................................... 17

*Associated Press v. All Headline News Corp.*,
    608 F.Supp.2d 454 (S.D.N.Y. 2009) ................................. 9

*Atari v. North Amer. Philips*,
    672 F.2d 607 (7th Cir. 1982) ........................................ 18

*Banxcorp v. Costco*,
    723 F.Supp.2d 596 (S.D.N.Y. 2010). ............................... 13, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007) ............................... 6, 16

*Brown v. Stroud, et al.*, 2011 WL 2600661
    (N.D. Cal. June 30, 2011) .............................................. 9

*Bucklew v. Hawkins*,
    392 F.3d 923 (7th Cir. 2003) ........................................ 19

*Cable v. Agence France Presse*,
    2010 WL 2902074 (N.D. Ill.) ....................................... 9, 15, 16

*Conley v. Gibson*,
    355 U.S. 41, 78 S.Ct. 99 (1957) ................................... 6, 7

*Dastar v. Twentieth Century Fox*,
    539 U.S. 23, 123 S.Ct. 2041 (2003) ............................... 4

*Dawn Assoc. v. Links*,
    203 USPQ 831 (N.D. Ill. 1978) ..................................... 17

*Defined Space, Inc. v. Lakeshore East, LLC, et al.*,
    797 F.Supp.2d 896, 2011 WL 3882714 (N.D. Ill. Sept. 1, 2011) .................. 15, 16

ii

*Ellis v. United States*,
    313 F.3d 336 (1st Cir. 2002) ............................................... 12

*FASA Corp. v. Playmates Toys Inc.*,
    108 F.3d 140 (7th Cir. 1997) ............................................... 20

*FASA Corp. v. Playmates Toys Inc.*,
    912 F.Supp. 1124 (N.D. Ill. 1994) ............................... 20

*Feist v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................... 8

*Foman v. Davis*,
    371 U.S. 178 (1952) ............................................... 7

*Fox v. Hildebrand*,
    2009 WL 1977996 (C.D. Cal. Jul. 1, 2009) ............................... 9

*Foxworthy v. Custom Tees*,
    879 F.Supp.1200 (N.D. Ga. 1995) ............................... 17

*Gamma Audio v. Ean-Chea*,
    11 F.3d 1106 (1st Cir. 1993) ............................................... 20

*Kelly v. Arribasoft Corp.*
    77 F.Supp.2d (C.D. Cal. 1999) ............................................... 15

*Kelly v. Arribasoft Corp.*
    280 F.3d 934 (9th Cir. 2002) ............................................... 15

*Magic Mktg. v. Mailing Servs.*,
    634 F.Supp. 769 (W.D. Pa. 1986) ............................... 16

*McClatchey v. Associated Press*,
    2007 WL 776103 (W.D. Pa.) ............................................... 9

*Murphy v. Millennium Radio Group, LLC*,
    650 F.3d 295 (3rd Cir. 2011) ............................... 9, 15, 16

*Murphy v. Walker*,
    51 F.3d 714 (7th Cir. 1995) ............................................... 6

*Peters v. West*,
    776 F.Supp.2d 742 (N.D. Ill. 2011) ............................... 17, 18, 19

*Pickett v. Prince*,
    207 F.3d 402 (7th Cir. 2000) ............................................... 18

*Pickrel v. City of Springfield*,
    45 F.3d 1115 (7th Cir. 1995) ............................................... 6

iii

*Pilgrim Badge & Label Corp. v. Barlios,*
    857 F.2d 1 (1st Cir. 1988) ............................................................ 2

*Ruolo v. Russ Berrie & Co.,*
    886 F.2d 931 (7th Cir. 1989) ................................................... 17, 20

*Satkar Hospitality v. Cook County Bd. of Review,*
    2011 U.S. Dist. LEXIS 61554 (N.D. Ill. Jun. 2, 2011) ............................. 2

*Scheuer v. Rhodes,*
    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ............................. 6

*Schiffer Publ. v.Chronicle Books, LLC,*
    73 USPQ2d 1090, 2004 WL2583817 (E.D. Pa. Nov. 12, 2004) ............ 2, 6, 13, 15

*Schrock v. Learning Curve,*
    586 F.3d 513 (7th Cir. 2009) ........................................................ 11

*Stanislawski v. Jordan,*
    672 F.2d 607 (7th Cir. 1982) ........................................................ 18

*Stockwire Research Group v. Lebed,*
    577 F.Supp.2d 1262 (S.D. Fla. 2008) ................................................. 8

*Stoffel v. SBC Communications,*
    430 F.Supp.2d 642 (W.D. Tex. 2006) ................................................. 2

*Susan Wakeen Doll Co. v. Ashton-Drake Galleries,*
    272 F.3d 441 (7th Cir. 2001) ........................................................ 20

*Tolle v. Carroll Touch, Inc.,*
    977 F.2d 1129 (7th Cir. 1992) ........................................................ 7

*Uffner v. La Reunion Francaise, S.A.,*
    244 F.3d 88 (1st Cir. 2001) ......................................................... 2

*Universal City v. Kamar,*
    217 USPQ 1162 (S.D. Tex. 1982) ..................................................... 17

*Vincent v. City Colleges,*
    485 F.3d 919 (7th Cir. 2007) ........................................................ 7

*Wildlife Express Corp. v. Carol Wright Sales, Inc.,*
    18 F.3d 502 (7th Cir. 1994) ........................................................ 20

iv

**STATUTES:**

Copyright Act of 1976 ("Copyright Act") ........................................... *passim*

17 U.S.C. § 102(a) ........................................... 11

17 U.S.C. § 302(a) ........................................... 11

17 U.S.C. § 401(c) ........................................... 13

17 U.S.C. § 405(a) ........................................... 13

Digital Millennium Copyright Act ("DMCA") ........................................... *passim*

17 U.S.C. § 1202 ........................................... *passim*

**RULES & REGULATIONS:**

Fed. R. Civ. P. 8 (incl. 8(a)(2)) ........................................... 6

Fed. R. Civ. P. 9(b) ........................................... 7

Fed. R. Civ. P. 12(b)(6) ........................................... *passim*

Fed. R. Civ. P. Rule (g) & (h) ........................................... 1

Fed. R. Civ. P. Rule 12(d) ........................................... 1

Fed. R. Civ. P. Rule 56(d) ........................................... 1

Local Rule 7.1 ........................................... 1

37 C.F. R. 202.1(a) ........................................... 16

37 C.F. R. 202.3(b)(4)(B) ........................................... 20

**OTHER AUTHORITY:**

Baicker-McKee, et al., Wests Federal Civil Rules Handbook
(2012 ed.) ........................................... 1

Berne Convention, March 1, 1989 ........................................... 13

Copyright Office Circular 34 ........................................... 16

C. Wright & Miller, Federal Practice & Procedure (3d ed. 2004) ............................ 2, 3

House Report 105-551 (Part I): Report of the House Judiciary
    Committee on H.R. 2281, WIPO Copyright Treaty
    Implementation Act (1998), July 31, 1997;
    *http://gpo.gov/fdsys/pkg/CRPT-105hrp551-pt1.pdf* ............................... 12

House Judiciary Committee Report on the DMCA; WIPO Copyright
    Treaties Implementation, *etc.*; to accompany H.R. 2281,
    May 22, 1998 (Nimmer) .................................................... 12

Senate Report on the DMCA; WIPO Copyright Treaties
    Implementation, *etc.*; to accompany H.R. 2281,
    May 11, 1998 (Nimmer) .................................................. 11

The WIPO Treaties, WIPO Copyright Treaty, D. Nimmer,
    Nimmer on Copyright, Vol. 10, Appx. 50 (Rel. 2010) ................................ 13

# I.
## RENEWED MOTION TO STRIKE MULTIPLE,
## SUCCESSIVE RULE 12(b)(6) MOTIONS TO DISMISS.

On June 7, 2012, pursuant to leave previously granted, Plaintiff PKI filed its Amended

Complaint against remaining Defendant Techny Advisors, LLC ("Techny"). (Dkt # 79) On June 28,

2012, Techny filed a partial answer to Count I of the Amended Complaint. (Dkt. # 88) (and since

filed an Amended Answer. Dkt. # 108) Techny also filed multiple 12(b)(6) motions, challenging

part of Count I and all of Count II of the Amended Complaint. (Dkts. # 89, # 92)

On July 11, 2012, the Court addressed Plaintiff's motion pursuant to Fed. R. Civ. P. Rules

12(g) and (h), Rule 12(d) and 56(d), and Local Rule 7.1, to strike Techny's multiple successive

Rule 12(b)(6) motions by noting that the only defect cured by Defendant's filing of a Combined

Memorandum was the violations of LR 7.1 pertaining to page limitations. (Dkt. # 106) This Court

ordered Plaintiff could renew its motion and arguments directed at the fact that Techny's multiple

12(b)(6) motions may be defeated by Rules 12(g) and (h) and otherwise by 12(d). (Dkt. # 106)

Although Techny filed a Combined Memorandum in support of both motions (Dkt. # 102),

Techny did not consolidate its several motions (Dkts. # 89, # 92) and did not otherwise address the

gravamen of the Plaintiff's motion to strike in this regard. Following is Plaintiff's Renewed Motion

to Strike Techny's several 12(b)(6) motions on one or more of the following procedural grounds.

## A. Techny's multiple, successive Rule 12(b)(6) motions violate the consolidation requirement of Rule 12(g) and (h).

"If a party chooses to make a motion under Rule 12, the party must include all Rule 12

defenses and objections then available in a single, omnibus motion." Baicker-McKee, *et al., West's*

*Federal Civil Rules Handbook,* (2012 ed.) (emphasis added). In response to the original complaint,

Techny made a Rule 12(b)(6) motion. (Dkt. # 38) Techny joined in the Rule 12(b)(6) motion made

by the original three defendants in this case challenging the Complaint on various grounds (Dkts. #

32, # 33), *inter alia,* attacking Plaintiff's Digital Millennium Copyright Act (DMCA) claim.

Grounds now asserted in Techny's second successive 12(b)(6) motion, alleging non-

protectability of one of the infringed Works (Dkt. # 89), were available to Techny at the time its first

12(b)(6) motion was filed, but were not presented in Techny's motion then. (Dkt. # 38, in re # 33)

The primary ground asserted in Techny's other successive 12(b)(6) motion (Dkt. # 92), is that Plaintiff's amended DMCA claim is defective under *Schiffer Publ 'g v. Chronicle Books.* (Dkt. # 94, at p. 4) That argument was previously presented in Techny's first round 12(b)(6) motion and, therefore, cannot be asserted here again. (Dkt. # 38, *cf.* Dkts. # 32, # 33)

In *Satkar Hospitality v. Cook County Bd. of Review,* 2011 U.S. Dist. LEXIS **8-10 (N.D. Ill. June 2, 2011), District Judge Kennelly, in disallowing successive Rule 12(b)(6) motions on procedural grounds, stated:

> "Rule 12 sets forth procedures for asserting defenses and objections in response to a complaint. Rule 12(b) identifies six defenses that may be asserted via motion before a party files its responsive pleading, including the plaintiffs "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
>
> Rules 12(g) and 12(h), in turn, provide for the joining of motions under Rule 12 and the waiver and preservation of certain Rule 12(b) defenses. *Id.* 12(g), (h).
>
>                           * * *
>
> The general purpose of Rule 12 is "to expedite and simplify the pretrial phase of federal litigation while at the same time promoting the just disposition of civil cases." C. Wright & A. Miller, 5B Federal Practice and Procedure § 1342, at 23 (3d ed. 2004). Rules 12(g) and 12(h) serve "to eliminate the presentation of [Rule 12] defenses in a piecemeal fashion." *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38. 4] (l st Cir. 2001) (citing *Pilgrim Badge & Label Corp. v. Barlios,* 857 F.2d 1, 3 (lst Cir. 1988) (per curiam)). "Thus, [s]ubdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion." *Pilgrim Badge & Label Corp.,* 857 F.2d at 3.

Thus, Rule 12 mandates a strong consolidation requirement for pre-answer Rule 12(b)(6) motion practice. *See, Pilgrim Badge,* 857 F.2d at 3, stating:

> "As the Advisory Committee's notes to subdivision (g) of the Rule indicate, Rule 12 precludes "a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein."

Fed. R. Civ. P. Rule 12(g) and (h) effectively ban Techny's pre-answer multiple Rule 12(b)(6) motions approach attempted here. See, *Stoffel v. SBC Communications, Inc.,* 430 F.Supp.2d 642, 647-48 (W.D. Texas 2006). There, the court noted the general bar that 12(g) and (h) present to such a tactic, and the court's preference that such matters be raised later on in proceeding or at trial, even if the pleadings have been amended:

" * * * Additionally. '[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.' 5C Wright & Miller. Fed. Prac. & Proc. § 1388."

For the foregoing reasons, this Court should strike Techny's multiple, successive 12(b)(6) motions as violative of Fed.R.Civ.P. 12(g) and (h).

## B. The multiple, successive Rule 12(b)(6) motions violate Rule 12(d).

Both of Techny's Rule 12(b)(6) motions rely heavily on attachments consisting of matters outside the record. (See, Dkt. # 91-2, and Dkt. # 94-2, now combined into Dkt. # 102-2,) Df.Cmb.Mem. Exs. A, B and D–G.)  Rule 12(d) requires that, unless such extraneous matters are excluded by the Court, such motions must be treated as ones calling for summary judgment under Rule 56, and the Court should allow Plaintiff a reasonable opportunity to present all materials pertinent. Rule 56(d), in turn, provides that in such event, the Court may defer the motion or deny it, in order to allow the non-movant time and opportunity to take discovery.

In the instant case, such discovery would no doubt lead to matters undermining, if not at least casting factual doubt upon, the veracity, methodologies and authenticity of such outside-the-record materials. The attachments to Techny's several motions as above noted (now to the Combined Memorandum Dkt. # 102-2) consist mainly of unverified purported results of Internet searches, conducted by some unknown person without any explanation as to what the Exhibits represent, the dates of the Exhibits, the methods or methodologies which were used, or any other information which might inform the Court or Plaintiff whether such Exhibits could be determined to be reliable or relevant. In other words, the attachments offer no foundational basis whatsoever.

Allowing Techny to present, in effect, multiple summary judgment motions at this juncture in the proceedings would cause a severe burden on the Plaintiff and on the Court, particularly at a point when discovery has not yet commenced in any respect. Plaintiff requests the Court strike the multiple pseudo-summary judgment  motions, masquerading under Rule 12(b)(6). Defendant may raise such issues, if at all, at a later time in the proceedings in the event discovery warrants.

* * *

Alternatively, and only in the event the Court denies the Plaintiff's Motion to Strike the

3

several 12(b)(6) motions, or either of them, Plaintiff submits the Court should deny the Motions to Dismiss on the merits, as follows:

## II.
## ARGUMENT IN OPPOSITION ON THE MERITS

### A. Background of Proceedings

This case was instituted in July 2011 against three Defendants, PersonalizationMall.com, Techny Advisors LLC and Abernook LLC. The original complaint alleged violations of the Digital Millennium Copyright Act, copyright infringement under the Copyright Act of 1976, and violations of the Lanham Act, including various state statutory and common law unfair competition claims. On October 13, 2011, the three defendants collectively moved to dismiss Plaintiff's original complaint pursuant to Rule 12(b)(6), arguing that the DMCA was not violated since its requirements, in particular the necessity for copyright management information (CMI) to be "conveyed," were not met. In addition, defendants collectively argued that the U.S. Supreme Court's decision in *Dastar v. Twentieth Century Fox*, as well as various authorities in this circuit, required dismissal of the Lanham Act and other state statutory and common law unfair competition claims because they were "preempted" by the Copyright Act. During the entire period from the commencement of the litigation through the Court's ruling on the first round of 12(b)(6) motions to dismiss (Dkt. # 53, "the February 8th Opinion"), no discovery was taken or initiated, and no sworn answers regarding the scope of the alleged wrongdoing was produced.

On February 8, 2012, the prior Court (Dist. Judge Kendall) granted in part and denied in part the three defendants' Rule (12(b)(6) motion. The most significant portion of the prior Court's ruling denying the 12(b)(6) motions, was to uphold the claim alleging violations of the DMCA against then-defendant PersonalizationMall.com. (Dkt. # 53, p. 17) In addition, the decision was clearly without prejudice to the filing of an amended complaint "as to all the defendants" – the Court stating "PKI has alleged enough to suggest that it could state a DMCA claim."*Id.* With regard to the copyright infringement claim, all three defendants virtually conceded liability on that ground, each alleging in an answer filed simultaneously with the 12(b)(6) motion, admitting that they (including

Techny) had no license to reproduce the Plaintiff's literary works. The Court dismissed Plaintiff's Lanham Act and related unfair competition claims with prejudice, as preempted by Copyright law.

On April 25, 2012, the parties all attended a settlement conference. At that time, Plaintiff reached a settlement with two of the defendants, PersonalizationMall.com and Abernook. Techny chose not to settle, even after a second attempt with the Magistrate on May 2, 2012. (Dkt. # 72)

On June 7, 2012, Plaintiff filed its Amended Complaint, recognizing the prior Court's concerns noted above. On June 28, 2012, Defendant Techny filed two separate Rule 12(b)(6) motions attacking the Amended Complaint or portions thereof. For the reasons stated below, and to the extent that this Court does not see fit to strike either or both 12(b)(6) motions on procedural grounds stated above, those motions should fail in their entirety for the following reasons.

## B. Critique of Techny's Preface and Introduction.

Defendant Techny approaches the Amended Complaint by attempting to chip-away at the number of Works infringed under Count I for copyright infringement, and by re-attacking Count II (the DMCA claim) as if it were the same set of allegations made in the original complaint. (Df.Cmb.Mem. 1) Techny's first claim that a verse from one of Plaintiff's poems is a mere 'phrase' and therefore, not eligible for copyright protection, is not only factually inaccurate, but applies an incorrect test for infringement. As to Count II (DMCA), Techny's bald assertion "Plaintiff's DMCA claim is no different than its previously asserted DMCA claim," completely ignores the Amended Count II (former Count I) and demonstrates Defendant's refusal to read and compare the manner in which the amended DMCA count complies with the previous Court's views and instructions. (Df.Cmb.Mem. 1-2; Dkt. # 53, pp. 14-17)

Rather than address any of the factual allegations contained in Count II of the Amended Complaint, Defendant attempts to harken back to the "facts" as interpreted by the prior Court. (Df.Cmb.Mem. 2) Under standards in this circuit, the original complaint has been superseded entirely by the Amended Complaint. In other words, it is a nullity. Significantly, Techny does not recognize the substantial support which the previous Court gave to Plaintiff's DMCA count, provided certain allegations could be made in good faith in an amended complaint, including, *inter*

5

*alia*, in relation to placement of copyright notices on each and every web page (Dkt. # 53 p. 15), and to appropriately link up the CMI to a true copyright owner's or copyright claimant's claim to copyright in conformance with the DMCA § 1202. (*Id.* pp. 12, 17)

An example of Techny ignoring the prior Court's ruling, is that Techny mistakenly cites to *Schiffer*, and then completely ignores Judge Kendall's analysis and her own investigation of Plaintiff's website with regard to whether a copyright notice appeared on each web page of PKI's *poetrygift.com* website. The Court confirmed the presence of the copyright notices, and ruled that would suffice as being within the definition of CMI under the DMCA and applicable case law, provided Plaintiff could allege that was the way the site appeared at the relevant times. (Df.Cmb.Mem. 4, *cf.* Dkt. # 53 p. 15) Those facts are true, and the Amended Complaint has been so amended. (Am.Compl. ¶ 8, Ex. D)

## C. The Legal Standards applicable to the Rule 12(b)(6) Motion

Alleging plausible grounds for relief means the Amended Complaint must allow a "reasonable expectation" that discovery will reveal evidence of unlawful conduct. *Bell Atlantic Corp.,* 127 S.Ct. at 1965. "The issue [on a Rule 12(b)(6) motion] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. ..." *Pickrel v. City of Springfield,* 45 F.3d 1115, 1118 (7th Cir. 1995), *citing, Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). When ruling on a 12(b)(6) motion, the court must accept all of the factual allegations in the Amended Complaint as true and construe all reasonable inferences in favor of the plaintiff. *See, Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Pleading Rule 8(a)(2)'s requirement of a "short and plain statement of the claim" means the Amended Complaint must contain only a minimal level of factual detail. *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65 & fn. 3. The classic verbal formula is that a complaint need only be sufficiently detailed to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* at 1964 *(quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). The Seventh Circuit has emphasized that "under Rule 8 of the Federal Rules of Civil Procedure ... a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the

6

wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.'" *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992).

Finally, even where a complaint is stricken, the proper remedy is for the court to explain the deficiencies and allow plaintiff leave to further amend. *Foman v. Davis*, 371 U.S. 178, 182 (1952).

**D.   Defendant's approach is more appropriate, if at all, on summary judgment.**

Typically, a defendant's 12(b)(6) motion will target the elements of the claims made, supported by appropriate authority, with argument explaining why one or more of those elements cannot be met by the plaintiff under any circumstances. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nowhere does Techny even try to state the proper elements of the claims, or the purported deficiencies in PKI's pleading of those elements. (Df.Mots. Dkts. # 89, # 92; Df.Cmb.Mem. 1-15)

Here, Techny contends Plaintiff's claims are "not plausible," the gist of the argument being the Amended Complaint does not on its face reveal "enough" facts pertaining to Plaintiff's claims. Those contentions are particularly unpersuasive. Judge Easterbrook reminds us, "[A] judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life. 'Any decision declaring "this complaint is deficient because it does not allege 'X' is a candidate for summary reversal, unless X is on the list in Fed.R.Civ.P. 9(b)." *Vincent v. City Colleges*, 485 F.3d 919, 923 (7th Cir. 2007) (citations omitted); "... [T]he rule 'plaintiff needs to prove fact Y' does not imply 'plaintiff must allege fact Y at the outset.' " *Id.* at 923-24 (also collecting cases at p. 924 fn. †). Here, none of the items Defendant claims are not plausible or not described by Exhibits attached to the Amended Complaint, bears any impact on whether the Amended Complaint is well-pled.

**E.   Defendant's Admissions.**

Before analyzing legal principles, it is helpful to review Defendant's admissions, both actual and deemed. Defendant's 12(b)(6) motions admit PKI's well-pled allegations, and a plain view of the Amended Complaint reveals the seriousness of Defendant's conduct.

With respect to Count I for copyright infringement, Defendant admits critical allegations pertinent to the infringement count (Am.Compl. ¶¶ 5-11, and 13-17), and concedes liability for such

claims – at least as to the Work entitled *On Your Confirmation Day*. By attacking only one of the four poetry Works at issue here (Dkt. # 89), Defendant, in effect, concedes the largest portion of Count I is not subject to a 12(b)(6) dismissal on the merits, and that Defendant is a wilful copyright infringer vis-a-vis at least the three other Works at issue. (Dkt. # 89) Underlying this concession, and as a consequence of the 12(b)(6) standards, Defendant admits, *inter alia*, all four (4) of the literary Works constitute original, copyrightable subject matter (Am.Compl. ¶ 9), and that PKI, or as in co-ordination with the creative author, is the rightful owner of the copyright, and registrations obtained therefor. (*Id.* ¶¶ 5, 10) Defendant further admits it had no license from PKI either to reproduce, display or disseminate the literary Works. (*Id.* ¶ 13; also see Am.Answ. Dkt. # 108.) Defendant admits that without PKI's permission, Defendant's reproduction, display and dissemination of the Works over the Internet, and otherwise, is unlawful, and constitutes infringement. (Am.Compl. ¶¶ 14, 15) PKI has thereby stated a claim for copyright infringement. *Feist v. Rural Tel. Serv.*, 499 U.S. 340, 361 (1991).

  With respect to Count II for violation of the DMCA, Defendant's separate motion (Dkt. # 92) admits all of the allegations pertaining to its liability for violating § 1202 of the DMCA. *See, Stockwire Research Group v. Lebed,* 577 F.Supp.2d 1262, 1266-67 (S.D. Fla. 2008). Defendant admits that a copyright notice, copyright symbol, URL identity, assigned title, product item identifier, telephone number trade name and other identifying information, were all embedded into or accessible from PKI's website, and constitute CMI. (Am.Compl. ¶¶ 19-23) Defendant admits it knew its Internet postings of PKI's Works, with the embedded digital data as well as visibly perceptible CMI stripped out, along with incorporating such Works and altered CMI into Defendant's website(s) and products, were not authorized. (*Id.* ¶¶ 24, 31) Defendant admits that even though it knew these matters were not authorized, it deliberately and intentionally ignored the true facts in order to conceal its own copyright infringement, and to create and communicate the false and misleading impression that the Works and products were Defendant's own, and all for its own commercial gain. (*Id.* ¶¶ 32-35) Finally, Defendant admits its actions caused harm to PKI. (*Id.* ¶ 36) Therefore, by virtue of their Rule 12(b)(6) motion, Defendant admits all of the key allegations

supporting the DMCA claim alleged against it.

**F.** **PKI states a valid DMCA claim for alteration, removal (§ 1202(b)) and dissemination of false (§ 1202(a)) CMI.**

The Digital Millennium Copyright Act (DMCA) was designed to foster electronic commerce via the Internet, and to make digital networks safe places for authors to disseminate and exploit their copyrighted works. The facts presented by the instant controversy strike at the very heart of the purposes for which the DMCA was enacted. Violators manipulate the Internet to unlawfully spread misinformation in an effort to otherwise conceal their infringements. Section 1202, pertinent here, prohibits the removal or alteration of, or the dissemination of false, copyright management information (CMI) whether or not by automated means, and whether or not in digital form. *See, Associated Press v. All Headline News Corp.*, 608 F.Supp.2d 454, 461-62 (S.D.N.Y. 2009)*, also, McClatchey v. Associated Press,* 2007 WL 776103, at \*\*5-6 (W.D.Pa. Mar. 9, 2007).

Therefore, the reach of DMCA § 1202 was intended by Congress to be broadly construed, applicable to the removal or alteration of CMI, or the dissemination of false CMI, in diverse scenarios. The key is "that in order to state a claim for violation of Section 1202(a) or (b), a plaintiff must allege facts showing that the alleged falsification or removal of CMI has some relation to the Internet, electronic commerce, or the purposes for which the DMCA was enacted." *Brown v. Stroud, et al.*, 2011 WL 2600661 (N.D. Cal. June 30, 2011). Plaintiff has amply complied. Moreover, the weight of modern authority holds broad definitions of CMI in statutory text control. *Agence France Presse  v. Morel*, 769 F.Supp.2d at 305-06. *Also, Cable v. Agence France Presse*, 728 F.Supp.2d 977, 980 (N.D. Ill. 2010), *citing, Fox v. Hildebrand*, 2009 WL 1977996, at \*3 (C.D. Cal. Jul. 1, 2009). (Citations omitted) *Also, Murphy v. Millennium Radio*, 650 F.3d 295, 302 (3rd Cir. 2011).

The prior Court's ruling made clear that Plaintiff's DMCA claim, with regard to at least one of the Works reproduced by prior defendant PersonalizationMall.com, was eminently plausible. (Dkt. # 53 p. 15) A simple reading of that Opinion shows that for the prior District Judge, the placement of a copyright symbol in the title of the allegedly infringing work on that defendant's own

9

website came the closest to being an obvious fit within the definition of CMI under 17 U.S.C. § 1202. (Dkt. # 53 p. 15) The importance of this portion of the prior Court's ruling is that the DMCA claim was deemed to be viable. The Court's further analysis, including the Court's review of Plaintiff's website, reveals that the remainder of the CMI analysis in relation to placement of a copyright notice or symbol led the Court to its decision to allow Plaintiff leave to amend the count to show more information regarding CMI, including issues such as placement of CMI on both the Plaintiff's and the alleged violator's website(s). (*Id.* pp. 15-17) Indeed, it appears that the most important factor for Judge Kendall in her Opinion was that the placement of a copyright symbol on each and every page of PKI's website constituted an appropriate and fully compliant item of CMI provided that it appeared on each and every page of PKI's website where an infringed work also appeared. (Dkt. # 53 p. 15) As noted herein below, each of the Court's concerns about how to amend the complaint have been addressed by Plaintiff both with respect to textual allegations in the Amended Complaint itself, as well as corresponding new Exhibits attached thereto.

Techny's Motion as it's directed at Plaintiff's Amended DMCA claim (Amended Complaint Count II), focuses on CMI from two perspectives. First Techny claims that PKI did not convey CMI with the asserted poems embodied and marketed from its own website. (Df.Cmb.Mem. 6-9) Second, Techny focuses on whether it conveyed false CMI through its own website, Giftsforyounow.com (Df.Cmb.Mem. 9-11) As explained below, Techny's emphasis ignores the allegations of the Amended Complaint and how it is pled to address Judge Kendall's concerns, and instead focuses on the February 8th Opinion only as it related to the limited allegations and exhibits contained in the original complaint.

## (1)     Plaintiff PKI clearly conveyed CMI in compliance with the DMCA.

Techny begins by addressing the previous Court's suggestion that the name "PoetryGift.com" cannot be CMI because the applicable copyright registrations show PKI as the owner of the copyright. (Df.Cmb.Mem. 6) Indeed, in the prior Court's Opinion, there was some analysis regarding CMI and how in the Court's view, that information must "link up" with information allowing a potential violator to determine whether or not there was a copyright

10

registration in force in relation to the particular work at issue. (Dkt. # 53 pp. 14-15) As analyzed herein below these suggestions by the prior Court (although now covered by the Amended Complaint) were incorrect, or at least not well founded.

Amended Complaint Exhibits H, I and J all demonstrate that had Techny bothered to do even minimal searches of public databases pertaining to the names Personal Keepsakes Inc., Poetry Gift, Poetry Gifts, the product item numbers and telephone number tied to Plaintiff's items, *inter alia*, including the records of the Illinois Secretary of State, Techny could have easily discovered the provenance of the applicable copyright claimant. Amended Complaint ¶¶ 11, 21 and 24, *inter alia*, have all been added to the claim in order to explain how Techny could have easily taken steps which would have resolved the prior Court's criticisms. Consequently, all concerns regarding tying the copyright claim to publicly available information have been met.

Notwithstanding the foregoing, several factors indicate why the prior Court's ruling in this regard is either erroneous or inequitable in its application. First, the DMCA does not require the copyright claimant to even have a copyright registration in order to state a claim for violation of the DMCA.(§ 1202) The prior Court's use of the term "copyrighted" as an analog or synonym for "registered" is plainly incorrect. (Dkt. # 53 pp. 14-15) In fact, "copyright" is not a verb. Under the Copyright Act, protection in a work "subsists from [the time of] its creation." 17 U.S.C. § 302(a), and § 102(a). *Cf. Schrock v. Learning Curve*, 586 F.3d 513, 523 (7th Cir. 2009). Thus, the prior Court's Opinion, purportedly limiting the scope of CMI to "registered" works, is not found in the law. (Dkt. # 53 p. 14; *cf.* § 1202) The prior Court's use of terminology in relation to doctrine, reveals the court was off course. More importantly, although the Court's Opinion goes on in dictum about works being "copyrighted" and the need to link up CMI with a copyright registration (Dkt. # 53 pp. 14-15), not the DMCA itself, nor its legislative history or any interpretive case law lend any support to that narrow a view. 17 U.S.C. §1202; Also, Senate Report 105-190 on DMCA May 11,

11

1998, and House Report 105-551 May 22, 1998 on the DMCA.[1]

The statute (17 U.S.C. § 1202) makes sense by putting the focus of the wrong on the violation itself, not seeking to excuse the violation through technicalities which do not relate to the violation. For example, the focus of the violator's acts in relation to CMI conveyed by the Plaintiff is not on whether the violator knows anything more about the CMI other than it exists as a claim in either a visually perceptible form or otherwise, *e.g.*, as digitally embedded data. To say that the DMCA excuses the acts of the violator who strips out, removes or otherwise alters, or distributes false CMI merely because the violator does not know who the CMI belongs to, would produce an absurd result. The intentional or reckless violator does what he does without concern for the consequences of his acts. He simply doesn't care.

Additionally, when applying the prior Court's concept of tying the identity of the claimant to a copyright registration, there is no reasonable construction of the statute which would allow Techny, a competitor of PKI's and one with full knowledge of Plaintiff's existence (Am.Compl. ¶ 24), to deny whose copyrighted material was being pirated and from what website. Even if the DMCA is to be interpreted as a general rule, requiring that an ability of the potential violator exist in order to vet the copyright claim of its victim's identity, in this case, where the violator is specifically aware of its victim, such general rule should surely give way to the exception that the violator knew its victim.

Next, Techny argues that the title of the work is also important to the purported necessity for informing the public that a work is "copyrighted." (Df.Cmb.Mem. 7; Dkt. # 53 p. 14) With respect to titles of the works, again there is no requirement in the DMCA that the "registered" title of the work in any way relate to the "assigned" title of the work as it is publicly displayed on the Internet. (*cf.* § 1202) However, the Amended Complaint demonstrates that Plaintiff did assign titles to the works as they appear on Plaintiff's website(s) (*Cf.* Am.Compl. Exs. A and B, and ¶ 21(iv)), and

---

[1]     Under the law of the case doctrine, although the prior Court's rulings are entitled to deference, they are not binding on this Court and, such statements being only part of an interlocutory Order, are reviewable by the successor co-ordinate judge at any time. *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002).

that the assigned titles have all been stripped by Techny. (*Id. cf.* ¶ 28)

Next, Techny criticizes Plaintiff's Exhibits, reminding us that in the original complaint PKI only generally alleged that a copyright notice appeared with each of the works, but that the exhibits attached to the complaint did not show the copyright notices. (Df.Cmb.Mem. pp. 8-10) Such argument merely serves to underscore the fact that the prior Court actually visited the PoetryGift.com website, and could see for herself that the copyright notices did appear on each page of PKI's website as of the date of the Court's visit. (Df.Cmb.Mem. p. 8; Dkt. # 53 p. 15) But, Techny's analysis fails when it examines the Amended Complaint. (Df.Cmb.Mem. p. 9) Although the Amended Complaint Exhibit B, in similar fashion to the original complaint, only uses the first "printer" page of each web page containing an infringed work, Plaintiff has cured the prior Court's concerns with a clear demonstration of the precise nature of the forms of copyright notice which appeared on each page of Plaintiff's websites where the Works appeared. (Am.Compl. ¶ 8 Ex. D) Techny correctly points out that the copyright notices refer to "original verses," but is incorrect in seeking to disassociate that claim from the Works at issue in this case. Indeed, although the prior Court's February 8 ruling indicated that connection would present a further issue for determination, *ie.*, the intent or mental state of the web page creator in placing the copyright notice and/or symbol on the page, the Court wisely avoided making any ruling on Rule (12)(b)(6) that the presence of such elements on the same web page could not plausibly be shown to be connected.

Positioning of a copyright notice should be "reasonable." 17 U.S.C. § 401(c). But, with respect to copyright notice requirements under the Copyright Act, since U.S. adherence to the Berne Convention, March 1, 1989, well before the Works at issue here were created, there is no notice requirement at all. *See*, 17 U.S.C. § 405(a). And, in context of a DMCA claim, location (*ie.* placement) of CMI goes to "intent," a question of fact. *Agence France Presse v. Morel*, 769 F.Supp.2d 295, 305 (S.D.N.Y. 2011). *Also see, Banxcorp v. Costco.*, 723 F.Supp.2d 596, 610 (S.D.N.Y. 2010) ("scienter issues ... are appropriate for resolution by trier of fact," criticizing and distinguishing *Schiffer – Banxcorp.*, 723 F.Supp.2d at n. 11)

Therefore, Techny's argument that the prior ruling in this case somehow conflicts with the

substantial additional allegations and new exhibits attached to the Amended Complaint is simply wrong. It ignores the plain import of the amended Count II (DMCA) in this regard.

**(2)    Not only did Techny remove and alter CMI (§ 1202(b)), but Techny conveyed false CMI (§ 1202(a)) through its own website and dissemination of Plaintiff's Works as if they were Techny's own.**

Techny argues further that the prior Court's Opinion limited CMI to the placement of a copyright symbol in the title of an infringing work. (Df.Cmb.Mem. 9-10) Techny misreads and too narrowly limits the Court's ruling, since the Court plainly found that placement of a copyright notice or symbol on the same "web page" as the infringed work would render the placement sufficient as CMI provided that there was a reasonable relationship between the claim of copyright and the subject work. (Dkt. # 53 p. 15) The Court's ruling strongly supports Plaintiff's allegations in the Amended Complaint that each and every "web" page of Plaintiff's website(s) on which an infringed Work appears contains a copyright notice, including a copyright symbol which plausibly relates to the infringed verse(s) in question. *Id., also,* Am.Compl. ¶ 8 and Ex, D.

In this regard, Techny engages in what can only be described in a specious, if not silly, argument about how many pages are represented by Plaintiff's Am.Compl. Exhibit "K". (Df.Cmb.Mem. 10-11) In order to understand Techny's argument, this Court can take judicial notice of the fact that there is a difference between a single "web" page as it exists on an Internet website, and as it may be viewed on a computer screen, versus the manner in which that single "web" page is rendered into a printed format on 8-1/2 x 11" paper, *ie.,* into "printer" pages. Bearing in mind this simple fact of everyday technology, the fallacy of Techny's next argument is apparent. What Techny suggests at this portion of its Combined Memorandum, is that the "printer" page which contains the copyright symbol relating to the "web" page shown in Exhibit "K", actually is comprised of two (2) "web" pages. It is not. (See Declaration of Plaintiff' Counsel attached hereto.) Techny attempts to expand upon and mis-apply that portion of the February 8th Opinion which suggests that unless the CMI is at least on the same web page as the Work or the infringed work, that such item of information is not placed close enough to the work to be "conveyed" and thus does not qualify as CMI. It is quite obvious from Plaintiff's Exhibit "K," including the description as contained in

14

Amended Complaint ¶ 27, "on each and every page of Techny's Giftsforyounow.com website," Techny's argument in this regard is unavailing and non-persuasive, since it's based on a fallacy.

Consequently, Techny's final arguments under this heading regarding the meaning of "general" copyright notices which may appear on entirely different web pages of an Internet website and Techny's assertion that notices on its web pages are at most "general' copyright notices, only relates to a narrow portion of the prior Court's Opinion that copyright notices which appear on different pages of the website than the pages on which the infringed work appear, is unavailing. (Dkt. # 53 pp. 16-17) Here, Amended Complaint Exhibit "K" demonstrates clearly that the particular web page in question contains only one work, Techny's "Confirmation Keepsake," and therefore, there is a high probability that the copyright notice in the name of Techny's website GiftsForYouNow.com (*cf.* Am.Compl. ¶ 3) is limited to that infringing work, and thus constitutes false CMI being "conveyed" to the public via the Internet.

The only case cited by Defendant in this regard is *Schiffer Publ. v.Chronicle Books.* However, *Schiffer* is not applicable procedurally. In *Schiffer,* the DMCA claim was only dismissed following a bench trial, not a 12(b)(6) motion. *Id.*, at *1. Obviously the court there saw the wisdom of taking evidence on the DMCA issues. Additionally, *Schiffer* precedes *Cable*, *Murphy* (both cited below) and *Defined Space* by 6 years or more and thus is of little analytical value. Finally, other than as cited in *Faulkner* (a case cited by defendants in the first round of 12(b)(6), but not relied upon by Judge Kendall), Plaintiff's counsel is unable to find any authority, much less persuasive authority, positively citing *Schiffer* for such proposition.[2] (*Cf. Banxcorp v. Costco*, 723 F.Supp.2d 596, 610 n. 11 (S.D.N.Y. 2010), criticizing and distinguishing *Schiffer.*).

Most recently, principles applicable to liability for violating § 1202 have been reinforced by the Third Circuit Court of Appeals in *Murphy v. Millennium Radio Group, LLC*, 650 F.3d 295, 300-305 (3rd Cir. 2011). ("*Murphy*") Such principles have also been well established in the

---

[2]     *Schiffer* relies on the District Court ruling in *Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D. Cal. 1999). That decision was overruled on at least an interrelated issue, and is red-flagged by Westlaw. *See, Kelly v. Arriba Soft*, 280 F.3d 934 (9th Cir. 2002). Section 1202(c) only states the CMI conveyed should be "in connection with... ."

15

Northern District of Illinois by District Judge Manning in *Cable v. Agence France Presse*, 728 F.Supp.2d 977, 978-81 (N.D. Ill. 2010); and by District Judge Gottschall in *Defined Space, Inc. v. Lakeshore East, LLC, et al.*, 797 F.Supp.2d 896, 2011 WL 3882714 at *1, *8 (N.D. Ill. Sept. 1, 2011). Therefore, in the 12(b)(6) context, PKI's DMCA claim (Count I) has "plausible" existence under *Murphy*, *Defined Space*, *Cable*, and in view of the *Bell Atlantic Corp.* standards.

### G.    Defendant's "short phrase" arguments are devoid of merit.

The latter portion of Defendant's Combined Memorandum (pp. 11-15) addresses Techny's other 12(b)(6) motion (Dkt. # 89) and argues that a verse from one of Plaintiff's poems is either not copyrightable because it is a mere "phrase," or too common to be protectable, or that its protectablity is somehow undermined by its inclusion with other works in a single registration.

### (1)    The accused poetry verse is obviously not a "short phrase."

The gravamen of Defendant's first argument in this section is that the Copyright Office's policy to deny protection to names, titles or short phrases compels the result that the Plaintiff's poem verse is not protectable. (Df.Cmb.Mem. 11-12) In this regard, Defendant cites Copyright Office Circular 34 which essentially embodies the bar found in 37 C.F.R. § 202.1(a). As noted in Circular 34, the Copyright Office's concern is that the categories, ie. names, titles or short phrases, do not meet the legal requirements for copyrightability due to the generally lacking amount of authorship and hence the lack of originality. (*E.g., see, Magic Mktg. v. Mailing Servs.*, 634 F.Supp. 769, 771-72 (W.D. Pa. 1986), citing *Albert-Culver*.)

The problem for Techny in making this argument is that there are numerous cases in modern jurisprudence, *ie.*, interpreting these rules in light of the 1976 Copyright Act, which demonstrate that otherwise relatively small amounts of text can represent a sufficient level of originality irrespective of brevity. From a strictly colloquial, common-sense standpoint, it is clear that Techny is stretching its argument regarding "short phrases" to fit a work consisting of an appreciable amount of text (a 17-word verse), namely, the second verse of Plaintiff's poem, *Confirmation Day*. More to the point, however, the applicable case law demonstrates that literary expression of more than several words, and even some short phrases of sufficient originality, have been upheld as

16

protectable expression by federal courts in the face of similar challenges based on the Reg. 202.1(a) bar. For example, in *Dawn Assoc. v. Links,* 203 USPQ 831, 834-35 (N.D. Ill. 1978) the court upheld the copyrightability of the 13-word passage "When there is no room in hell ... the dead will walk the earth." In *Universal City Studios v. Kamar Industries*, 217 USPQ 1162, 1166 (S.D. Tex. Hous. Div. 1982) the court upheld copyright protection for 3- and 4-word expressions "I Love You E.T.," and "E.T. Phone Home." In *Foxworthy v. Custom Tees*, 879 F.Supp. 1200, 1217-19 (N.D. Ga. 1995), the court enforced copyright protection for 6-words "You might be a redneck if...", followed by a short punch line, *e.g.*, the 5-word "...you've ever financed a tattoo." *Id.* at 1204. And, in *Andreas v. Volkswagen of Amer.*, 336 F.3d 789 (8th Cir. 2003), the court upheld a claim based upon a jury's finding of copyright infringement through defendant's literal copying of 10 words of plaintiff's expression from a 26-word caption to the plaintiff's drawing. *Id.* at 791-92.

Moreover, Techny's citation to *Peters v. West* and *Alberto-Culver* cases under this section is completely unavailing in view of more compelling authority in our circuit. The Seventh Circuit, in *Amer. Dental Ass'n v. Delta Dental Plans Assoc.*, 126 F.3d 977 (7th Cir. 1997), has ruled that even a 12-word descriptive passage "guided tissue regeneration – nonresorbable barrier, per site, per tooth (includes membrane removal)" (*Id.* at 977), was protectable since even some "numbers, [and] short descriptions ... [can be] copyrightable subject matter under 17 U.S.C. § 102(a)." *Id.* at 979. Even in *Allen v. Destiny's Child*, cited by Techny under this 12(b)(6) motion (Df.Cmb.Mem. pp. 12-13), Chief Judge Holderman, in denying defendant's motion for summary judgment, held that a reasonable jury could find that the 3-word phrase "cater to you" was protectable original expression (2009 WL 2178676 at * 9), particularly when applying the "total concept and feel" test (*Id.* at *12) as combined with other elements of lyrics to a song. (N.D. Ill. July 21, 2009). *See also, Ruolo v. Russ Berrie*, 886 F.2d 931, 939 (7th Cir. 1989).

As noted above, *Alberto-Culver v. Andrea Dumon* is inapplicable here, if not already distinguished away by *Allen v. Destiny's Child*. The *Alberto Culver* case involved copying of a 7-word passage in a descriptive portion of text which the court deemed not to rise to the level of originality so as to be protectable. ("is the most personal sort of deodorant" *Id.* 466 F.2d at 708.)

17

The court addressed the words at issue more on the basis of their purely descriptive content as opposed to the amount of text, and found that such minimal portions of descriptive material in relation to a product did not meet the threshold for originality. In the instant case, Plaintiff's Work consists of a 17-word verse, and presents no parallel to the product description analyzed in *Alberto-Culver*. Consequently, defendant's attempt to analogize our facts to *Alberto-Culver* falls flat.

Similarly, although Techny cites *Peters v. West*, [3] to suggest that since the court there isolated a part of a song lyric, *i.e.*, the 4-word phrase "couldn't wait no longer," under a dissection analysis, that method should apply here. (Df.Cmb.Mem. pp. 11-12) That case, however, was one seeking to find "substantial similarity" and resulted in the unfortunate misapplication of dissection analysis, a method generally frowned upon by the Seventh Circuit.*See, Stanislowski v. Jordan*, 337 F.Supp.2d 1103, 1113 (E.D. Wis. 2004); *also, Atari v. North Amer. Philips*, 672 F.2d 607, 614 (7th Cir. 1982).

**(2)     The accused poem is unique, idiosyncratic and entitled to protectabilty under the Feist standard.**

Next, Techny attempts to cast Plaintiff's verse as one merely conveying an idea typically expressed in a limited number of ways, and thus not protectable by copyright. (Df.Cmb.Mem. 12-13) Here Defendant argues another aspect of its contention that the Plaintiff's work is merely a short phrase by attempting to dissect the 17-word verse into subparts and then explaining them away as being separately uncopyrightable components on the basis of commonality. As noted above, the Seventh Circuit disfavors such dissection analysis which, at best, might only apply in a "substantial similarity" case. Here. Techny copied Plaintiff's 17-word verse "verbatim." The reason such "dissection" approach is improper in this context is because all works of art, particularly literary works such as poetic verses, are comprised of words as building blocks which separately have a more common use in everyday language, but when combined by an author easily rise to the minimal level of creatively required for copyright protection. *Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir. 2000) ("all works of art are ultimately combinations of familiar, uncopyrightable items."); and,

---

[3]     That case is on appeal and awaiting a decision following oral argument.

*Bucklew v. Hawkins*, 392 F.3d 923, 929 (7th Cir, 2003) ("Every expressive work can be decomposed into elements not themselves copyrightable ... [T]he presence of such elements obviously does not forfeit copyright protection of the work as a whole...")

Moreover, Defendant's argument under this heading is weak, since it's supported only by unsworn exhibits reaching far outside the scope of any reasonable 12(b)(6) motion. In particular, Defendant's motion Exhibits E, F, and G (Dkt. # 102) are presented without any foundational basis whatsoever. It is one thing for Plaintiff to attach exhibits to its Amended Complaint accompanied by fact allegations from which the Court can discern the rationale behind the exhibit and provide foundational basis for the allegations pertaining thereto to be admitted or denied. (See Am.Compl. ¶¶ 5, 7-8, 10-11, 21, 24 and 27) in relation to Am.Compl. Exs. B-D and H-J.) But it is quite another for Defendant to fabricate numerous unexplained Internet searches without any foundational basis or explanation as to the methodology for such searches and results. Most of the exhibits which Defendant proffers are not even identified by date. (Df.Cmb.Mem. Exs. D and E) Moreover, Defendant stretches to combine several of such searches just to approximate some level of interconnectedness with which to cobble its theory to match even a small part of Plaintiff's 17-word verse. (Df.Cmb.Mem.Exs. D and E) While Techny's Cmb.Mem. Ex. G does contain a recent date (June 27, 2012), the verse which accompanies that item is not the same as Plaintiff's verse. The net result of these items from outside the record in the context of Defendant's argument at pages 12-13 of its Combined Memorandum is that they provide nothing which is useful to the Court or that can be responded to by the Plaintiff.

Lastly, Defendant's repeated citation to *Peters* and *Allen*, neither of which bear any persuasive factual relationship or parallels to the nature and character of Plaintiff's poem verse, misses the point here. The instant case involves "verbatim" copying of an appreciable amount of text, while in contrast, *Peters* and *Allen* did not.

**(3)    PKI is entitled to assert an infringement claim (and one for DMCA violation) on the basis of its applicable registration pertaining to more than one work.**

Under this final heading, Techny makes the absurd argument that because the subject poem

is one of twenty contained in the registration application (Am.Compl. Ex. G), the infringement claim cannot apply to that individual poem. Techny either misunderstands, or deliberately ignores, the technical aspects of copyright registration. Defendant seems to be making the argument that unless an infringer copied all twenty poems covered by that particular registration, there cannot be a claim for infringement. (Df.Cmb.Mem. 13-15)

In addition, under this heading, Defendant not only conflates several strains of analysis pertaining to how courts view the concepts of access and similarity in relation to infringement claims, but actually applies an incorrect test, one which is disfavored by the Seventh Circuit with regard to infringement analysis. Defendant's citation of *Wildlife Express*, *Susan Wakeen*, *Ruolo v. Russ Berrie*, and *FASA v. Playmates* is therefore misplaced, merely serving to underscore Defendant's misunderstanding of the difference between "substantial similarity" analysis on the one hand, and "verbatim copying" analysis on the other.

Without any factual basis whatsoever, much less any relevance to any issue in this case, Defendant makes the bald statement that "the U.S. Copyright Office did not examine just the [Plaintiff's verse at issue here]." (Df.Cmb.Mem. p. 14) With respect to this unfounded assertion, it is clear that Plaintiff's poem is separately one of 20 which are registered under a particular registration. Defendant has no idea what the copyright office did or did not do, but it is clear the registration covers each of the individual works being registered. (Am.Compl. Ex. G) Plaintiff's registration description for "nature of authorship" as "entire collection" is a colloquial, lay person's reference to all of the individual Works and does not make the registration one for a "collective work" as that term of art is defined under the Act. Even *assuming arguendo* that entire set of Works is deemed to be a "collective" one, 37 C.F.R. § 202.3(b)(4)(B) provides that protection in such an unpublished collection "extends to each copyrightable element." Since PKI's Works are registered as "unpublished" (See, Am.Compl. Ex. G Space 3(b)), those individual components are each separately deemed registered and protected. *Also see, Gamma Audio & Video v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993) (multiple works may be registrable on a single registration form). If the Copyright Office had felt that some part of that Work(s) was lacking in originality, it could have

20

questioned the registration as to that portion. Plaintiff is entitled to the presumption that the Copyright Office examined each sub-part of Plaintiffs "collection," and therefore it is up to Defendant to come forward with evidence to rebut such presumption. It has not

### III.    CONCLUSION

WHEREFORE, Plaintiff prays for the entry of an order denying the Motions to Dismiss in their entirety, and that Defendant be required to Answer all counts of the Amended Complaint, and for such other and further relief as to the Court shall seem just and reasonable.

Respectfully submitted,

PERSONAL KEEPSAKES, INC.,
d/b/a POETRY GIFT.COM, Plaintiff.

By: _____
                Attorney

Mark Barinholtz
Melinda Schramm
MARK H. BARINHOLTZ, P.C.
Attorneys for Plaintiff
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121

21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PERSONAL KEEPSAKES, INC. )
d/b/a POETRYGIFT.COM, )
               Plaintiff, )     No. 11-cv-05177
-vs- )
 )     JUDGE THARP
TECHNY AVISORS, LLC., an Illinois )
Limited liability company, *et al.* )     MAG. JUDGE KEYS
 )
              Defendants. )

**DECLARATION OF MARK H. BARINHOLTZ IN SUPPORT
OF PLAINTIFF'S RESPONSE TO TECHNY'S 12(b)(6)
MOTION TO DISMISS COUNT II (DMCA) OF
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

MARK H. BARNHOLTZ, under penalty of perjury and pursuant to 28 U.S.C. § 1746,

declares as follows:

1. I am a member in good standing of the bar of the State of Illinois and of this Court.

2. I submit this Declaration in connection with Plaintiff's argument in opposition to

Techny's Motion to Dismiss directed at Count II of the Amended Complaint, and in particular as

it relates to Plaintiff's Amended Complaint Exhibit "K".

3. Attached to this Declaration is a true copy of the Internet web page shown in Ex. "K"

to Plaintiff's Amended Complaint, which Plaintiff reviewed and printed out before this case was

commenced.

4. The Internet web page attached hereto, and as attached to the Amended Complaint, is

comprised of a single web page from Techny's website *giftsforyounow.com*. The page numbers at

the upper right hand corner of the Exhibit attached hereto represent the number of "printer" pages

that are rendered by the single web page depicted in the Exhibit, when printed on paper.

5.  Exhibit "K" to the Amended Complaint is a slightly enlarged version of the Exhibit attached hereto, but with the addition of the designations "Page 1 of 2," and "Page 2 of 2" added by Declarant, as well as an arrow at page 2, to emphasize the copyright notice.

6.  Both the Exhibit attached hereto and Exhibit "K" to the Amended Complaint are otherwise identical, and depict one (1), single, distinct web page on the defendant Techny's website *giftsforyounow.com*.

DATED:   August 21, 2012

MARK H. BARINHOLTZ

Attorneys For Plaintiff:

Mark Barinholtz
Melinda Schramm
MARK H. BARINHOLTZ, P.C.
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121

-2-

Personalized Confirmation Gift, Personalized Religious Gift, unique religious gift



Order Status   Catalog Orders   Size Chart & FAQ   Contact Us   Sign In

Make it Personal with Personalized Gifts!

Search for ...                     Sut

**View Cart**
**0 Products** $0.00

BY OCCASION   BY RECIPIENT   BY PRODUCT   GRAD GIFTS   GIFTS FOR DAD   BEST SELLERS   WHAT'S NEW



Personalized Christian Gifts   Personalized Confirmation Gifts Catholic Confirmation Gifts

### God's Eternal Love Black Bi-Fold Personalized Confirmation Picture Frame (Item #915986)

**Personalized Confirmation Picture Frame - Personalized Confirmation Gift**
Celebrate the Holy Spirit with our Personalized Confirmation Picture Frame. As your child completes the sacred Confirmation remember this glorious event with this beautifully rich & elegant Personalized Confirmation Picture Frame. It is sure to be a family keepsake all will adore.

Our Personalized Confirmation Picture Frame measures 11 3/4"x 7 3/4" and holds two 4" x 6" photos.

Includes FREE Personalization! Personalize your God's Eternal Love Black Bi-Fold Confirmation Picture Frame with a name and date.

**Confirmation Keepsake Reads:**
*May you choose God
above all others.
May you choose
love and justice too.
May the choices you make
each and every day
reflect God's infinite love
for you.
Congratulations and best wishes
on this special day.
May God continue to bless you always.*

Gifts For Mom
Gifts for Babies
Gifts for Bridal Parties
Gifts for Her
Gifts for Him
more...

**Specialty Shops**
Photo Gifts
Golf Gifts
Personalized Jewelry
Embroidery Gifts
Cancer Awareness Gifts
more...

**By Product**
Picture Frames
Personalized Doormats
T-shirts
Mugs
Garden Flags
Afghans
more...



Name: [            ]

Date: [            ]

 Click to View Your Personalized Product

List Price $29.95 > You Save $5.00

**$24.95**   [1]   Add to Cart

Most orders ship in 1-2 business days

ShareThis



**Mailing List**
Please enter your email addres   [Sign Up]


FREE Shipping on orders over $75


VERIFIED BY GeoTrust GIFTSFORYO...
CLICK 15 06,11 14:08 UTC


BBB ACCREDITED BUSINESS

See our BBB Award

You May Also Like   Customers Recommend   Reviews   Additional Info


Godfather Keepsake
$16.95


Your Spirit Personalized Confirmation Valet Box
$24.95


Praying Boy Personalized Wood Wall Cross
$19.95


Holy Spirit Confirmation Wood Picture Frame
$21.95

God's Eternal Love Black Bi-Fold Personalized Confirmation Picture Frame



| | | | |
|---|---|---|---|
| Home | Affiliate Program | Gift Box Service | Statement of Trust |
| My Account | Photo Information | How to Choose a Personalized Gift | Privacy Policy |
| Site Map | Revision Policy | Corporate Sales | Press Releases |
| About Us | Return Policy | Wholesale Personalized Gifts | Links |

**Valentines Day Gifts   Mother's Day Gifts   Father's Day Gifts   Christmas Gifts   Birthday Gifts   Memorial Gifts   Personalized Wedding Gifts   Graduation Gifts   Gifts for Him   Gifts for Her   Personalized Baby Gifts   Sister & Friendship Gifts   Personalized Frames   Personalized T-shirts   Personalized Mugs   Personalized Christmas Ornaments   Anniversary Gifts**

© 1999–2011 — **GiftsForYouNow.com** Personalized Gifts, tel.1-630-771-0095

**Welcome to GiftsForYouNow.com, the home of Personalized Gifts and Personalized Gift Ideas For All Occasions.**

**Personalized Gifts** create wonderful memories and thoughtful impressions. Present your Mom, Dad, Grandma, Grandpa, Sister, Brother, Aunt, Uncle, Friend or Co-worker with unique Personalized Gifts. GiftsForYouNow.com has **Personalized Gifts** at the right price. We are the leader in affordable, high-quality personalized gifts. Personalized gifts make celebrating special occasions with family and friends memorable. When you want to send the very best, send a Personalized Gift from GiftsForYouNow.com.

**Father's Day is Sunday, June 19, 2011.** Father's Day is a perfect day to express your admiration and love for Dad. He is the strength, cornerstone and support every family needs. A Dad is someone to pick you up when you have fallen, dust you off and provide the little nuances that help us continue to try, achieve and succeed. Honor your Father, Dad, Grandpa or Papa this Father's Day with a **Personalized Father's Day Gifts** from GiftsForYouNow.com. He deserves the best, so give him the best this Father's Day with Gifts from GiftsForYouNow.com..

Spring and Summer bring about many additional fun events many families share. Our favorites are Graduations, Birthdays and Weddings. GiftsForYouNow.com has a thoughtful collection of **Personalized Graduation Gifts** suitable for your Class of 2011 graduate including many Graduation Photo Gifts. A birthday is always a lot of fun. Give your birthday boy or girl an awesome **Personalized Birthday Gift** celebrating this special day. Spring and summer weddings are a natural, whether it is indoors or outdoors this time of the year is glorous for a wedding celebration. Present your newlywed couple with a **Personalized Wedding Gift** from GiftsForYouNow.com. Heart filled thoughts and joy are expressed through a beautifully created Personalized Wedding Present. GiftsForYouNow.com makes Giving easy, fun and affordable for all occasions! GiftsForYouNow.com is the leader in Personalized Gifts.
Check out our new sister site: **www.MyWalkGear.com.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the  21st  day of August, 2012, a true and correct copy of the foregoing Plaintiff's Combined Memorandum in Support of the Renewed Motion to Strike, and in Opposition to Defendants' Rule 12(b)(6) Motions to Dismiss, was personally served upon the following attorneys for defendant:


Attorneys For TECHNY ADVISORS, LLC

        Robert H. Resis, Esq
        BANNER & WITCOFF, LTD.
        10 South Wacker Drive
        Suite 3000
        Chicago, IL 60606


through the court's ECF electronic filing system, at Chicago, Illinois.


                                        Attorney for plaintiff